IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Keith Kessler, Deanna Kessler, Stephen Kessler, Leah Kessler, Hayden Kessler, and Megan Kessler, <br><br>           Plaintiffs, <br><br>       vs. <br><br> Minnesota Power, a Division of ALLETE, Inc. <br><br>           Defendant. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 1:22-cv-029 |

Before the Court is the Defendant's motion for summary judgment filed on June 2, 2025. See Doc. No. 126. The Plaintiffs filed a response in opposition to the motion on July 14, 2025. See Doc. No. 145. The Defendant filed a reply brief on July 28, 2025. See Doc. No. 150. For the reasons set forth below, the motion is granted.

I.   **BACKGROUND**

The Kesslers own real property in Oliver County, North Dakota. This includes the Northwest Quarter of Section 15, Township 141 North, Range 87 West and portions of the Southeast Quarter of Section 15, Township 141 North, Range 87 West, Oliver County, North Dakota. The Kesslers own several structures on the Northwest Quarter, including residential and agricultural buildings. Specifically, a structure that is allegedly used as a residence ("Kesslers' Farmstead") sits on the Northwest Quarter.

On May 3, 2013, Minnesota Power filed an application with the North Dakota Public Service Commission ("PSC") for a Certificate of Site Compatibility seeking authorization for the construction of the Bison 4 Wind Project ("the project"), consisting of up to 70 wind turbine

1

generators and associated facilities in Oliver County, North Dakota. See Doc. No. 22-2. On September 13, 2013, the PSC held a jurisdictional and siting hearing regarding the Certificate of Site Compatibility Application. Id. On September 25, 2013, the PSC issued Minnesota Power a Certificate of Site Compatibility ("certificate") for the project. Id. at p. 9. The certificate issued by the PSC required that "No turbines will be placed within 1,400 feet of an occupied residence." See Doc. No. 22-2, p. 7. "Occupied residence" was not defined by the certificate or any applicable laws, rules, or regulations.

Following the issuance of the certificate, Minnesota Power moved forward with the project, including erecting Turbine 441 adjacent to the Kesslers' property. On November 8, 2013, the Kesslers granted Minnesota Power a Wind Project Easement Agreement. See Doc. No. 88-3. Among the rights granted by the Kesslers was a noise easement "for the right and privilege to generate and maintain audible noise on and above the Owner's Property at any or all times of the day or night." Id. According to the Kesslers' complaint, Turbine 441's construction began in June or July 2014. See Doc. No. 68, p. 2. Turbine 441 became fully operational in October 2014.

On April 23, 2020, the Kesslers filed an administrative complaint with the PSC alleging that the turbine was built too close to an occupied residence, the Kessler Farmstead, in violation of the 1,400 feet setback requirement ordered by the PSC in the certificate. See Doc. No. 22-1. On August 4, 2021, the PSC issued its Findings of Fact, Conclusions of Law and Order finding: (1) Minnesota Power constructed Turbine 441 approximately 1,100 feet from the Kesslers' structure, and (2) that the structure was occupied at the time of siting and violated the 1,400-foot setback required by the certificate. Id. The PSC ordered Minnesota Power to remove Turbine 441 within six months. Id. Turbine 441 was decommissioned and taken down in 2021.

On January 19, 2022, Keith Kessler and Deanna Kessler filed an action in state court asserting claims for inverse condemnation, negligence, nuisance, loss of enjoyment and use of property, and attorney's fees. See Doc. No. 1-1. The Kesslers allege the following damages occurred during the period in which Turbine 441 was operational: devaluation of the property, inconvenience, inability to have full use and enjoyment of the property, and expenses occurred by using an alternative property. They also seek punitive damages, attorney's fees incurred during the PSC proceedings, and attorney's fees in this matter. On February 15, 2022, Minnesota Power removed the action to federal court on the basis of diversity jurisdiction. See Doc. No. 1. On January 4, 2023, Keith Kessler and Deanna Kessler filed an amended complaint that added Stephen Kessler, Leah Kessler, Hayden Kessler, and Megan Kessler as plaintiffs. See Doc. No. 68. Minnesota Power filed this motion for summary judgment on June 2, 2025. See Doc. No. 126. The motion has been fully briefed and is ripe for disposition.

II.   **STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### III.    LEGAL DISCUSSION

#### A.    INVERSE CONDEMNATION

The Kesslers bring an inverse condemnation claim against Minnesota Power alleging Minnesota Power improperly placed Turbine 441 approximately 1,100 feet from the Kessler Farmstead, constituting a taking of the property. The Kesslers allege as a direct and/or proximate result of the taking, they were damaged by the devaluation of the property, inconvenience, inability to have full use and enjoyment of the property, and additional expenses incurred by using an alternative property due to the inability to fully use the property adjacent to Turbine 441 during the seven years the turbine was operational.

Minnesota Power argues the Kesslers' inverse condemnation claim is barred by a six-year statute of limitations. The Kesslers' allege the dates of taking were 1) the day the turbine began construction in June 2014 and 2) the day the turbine became operational in October 2014. Minnesota Power maintains the statute of limitations began on these dates, both of which occurred more than six years before the Kessler filed this action. The Kesslers argue the inverse condemnation claim constituted a continuing tort until Turbine 441 was decommissioned in 2021 and, therefore, the statute of limitations began in 2021.

"The statute of limitations for a continuing tort does not begin to run until *the tortious acts* cease." Beavers v. Walters, 537 N.W.2d 647, 650 (N.D. 1995 (emphasis added). Under North Dakota law, the statute of limitations for an inverse condemnation claim is six years. Hager v. City of Devils Lake, 2009 ND 180, 773 N.W.2d 420. An inverse condemnation claim, which is a constitutional claim to enforce a condemning authority's obligation to pay just compensation to the owner for taking or damaging property, is in effect a contract to compensate for damages. Id. at ¶ 34. Accordingly, for inverse condemnation claims the North Dakota Supreme Court has applied N.D.C.C. § 28-01-16(1), which imposes a six-year statute of limitations period for "[a]n action upon a contract, obligation, or liability, express or implied." Because an inverse condemnation claim is treated as a contract claim, rather than a tort claim, the continuing tort theory is not applicable. The Plaintiffs have not cited any authority that supports applying the continuing tort theory to inverse condemnation cases.

Even if the continuing tort doctrine applied to inverse condemnation claims, the doctrine is nevertheless inapplicable in this case. Instead of continuity, as the name suggests, the doctrine focuses on cumulativeness and applies "to allow suit to be delayed until a series of wrongful acts blossoms into an injury upon which suit can be brought." Roemmich v. Eagle Eye Dev., LLC, 526

F.3d 343, 350 (8th Cir. 2008). A series of wrongs is continuous for the purposes of the doctrine only "when no single incident in a chain of tort[i]ous activity can fairly or realistically be identified as the cause of significant harm." Id. (citing to 54 C.J.S. *Limitations of Actions* § 194 (2008)).

This case lacks a series of wrongful acts that collectively amount to an injury. All of the alleged harm to the Kesslers resulted from the taking when construction of the turbine began in June 2014 and when the turbine became operational in October 2014. Giving the Plaintiffs the benefit of the doubt, their claim began to accrue in October 2014. Accordingly, the Kesslers were required to bring this action by October 2020. The Kesslers untimely brought this action in January 2022.

The Kesslers also contend they were required to exhaust administrative remedies by filing a complaint with the PSC and receiving a final decision prior to bringing a civil complaint. Insofar as the Kesslers were required to exhaust administrative remedies, they have not cited any legal authority stating that exhausting administrative remedies tolls the statute of limitations. The Court is not persuaded by the Kesslers' implication that exhausting administrative remedies tolled the six-year statute of limitations. See Grzeskowiak v. Dakota Bridge Builders, 241 F. Supp. 2d 1062 (D.N.D. 2003) ("[t]he fact Plaintiff was involved in an administrative proceeding [did] not toll the statute of limitations."); Hartt v. United Const. Co., 655 F. Supp. 937 (W.D. Mo. 1987), aff'd, 909 F.2d 508 (8th Cir. 1990) (concluding involvement in administrative proceedings does not toll the statute of limitations when the administrative proceedings do not hamper or prevent the plaintiff from filing a complaint in order to preserve a claim); Opp v. Off. of N. Dakota Att'y Gen. - BCI CWL Unit, 2023 ND 131, 993 N.W.2d 498 (equitable tolling cannot be used to extend a statutory deadline for perfecting an appeal of an administrative decision because North Dakota has not

6

adopted the doctrine). Therefore, the Kesslers' inverse condemnation claim is barred by the six-year statute of limitations.

### B.    NEGLIGENCE

The Kesslers allege Minnesota Power breached a duty owed to them by placing Turbine 441 within the 1,400 foot setback distance set by the PSC. Minnesota Power argues the negligence claim is barred by the applicable statute of limitations. The Kesslers maintain the statute of limitations period began when the turbine was decommissioned in 2021, because the continuing tort doctrine applies.

General negligence claims in North Dakota are subject to a six-year statute of limitations period under N.D.C.C. § 28-01-06(5). Lang v. Barrios, 472 N.W.2d 464, 466 (N.D. 1991). Similar to the Court's analysis for the Kesslers' inverse condemnation claim, the continuing tort doctrine does not apply to the Kesslers' negligence claim because all of the alleged harm to the Kesslers ultimately resulted from the operation of Turbine 441, rather than a series of wrongful acts that collectively amount to an injury. Under the discovery rule, the limitations period begins to run when the plaintiff discovers or reasonably should have discovered the injury. Erickson v. Scotsman, Inc., 456 N.W.2d 535, 538 (N.D. 1990). "[T]he discovery rule requires only that the plaintiff be aware of an injury; it does not require the plaintiff to know the full extent of the injury." Dunford v. Tryhus, 2009 ND 212, ¶ 10, 776 N.W.2d 539. The Plaintiffs had knowledge of the placement of the turbine by June 2014 when it was erected and were clearly aware it was operational in October 2014. The Plaintiffs' claim began to accrue in October 2014 when they had the necessary knowledge to bring a negligence claim against Minnesota Power. The six-year statute of limitations period expired in October 2020. The Plaintiffs brought this claim in January

2022, more than seven years after the Kesslers had knowledge of the alleged negligence. Therefore, the Kesslers' negligence claim is barred by the applicable six-year statute of limitations.

### C.   NUISANCE

The Plaintiffs allege Minnesota Power's placement of Turbine 441 constitutes a nuisance. Minnesota Power alleges the Plaintiffs' nuisance claim is untimely. The Plaintiffs again allege that placing Turbine 441 approximately 1,100 feet from the Kessler Farmstead created a continuing tort.

Under North Dakota law, a nuisance claim is also subject to a six-year statute of limitations. See N.D.C.C. § 28-01-16(2). As set forth above, Turbine 441 did not create a continuing tort. The Plaintiffs do not allege a series of wrongful acts that collectively amount to an injury. They argue "*the placement of the turbine* created a continuing tort." See Doc. No. 145, p. 25 (emphasis added). The Kesslers point to one single incident from which all of their alleged injuries arise. Thus, the continuing tort doctrine is inapplicable to the Kesslers' nuisance claim.

As set forth above, the Plaintiffs knew that Turbine 441 was erected in June 2014 and became operational in October 2014. The Kesslers were required to bring their claim of nuisance by October 2020, six years after the claim began to accrue in October 2014. Accordingly, the Kesslers' nuisance claim, which was brought in January 2022, is barred by the statute of limitations.

### D.   LOSS OF ENJOYMENT AND USE OF PROPERTY

Minnesota Power argues summary judgment must be granted against the Plaintiffs' loss of enjoyment and use of property claim because the loss of enjoyment and use of property is merely

a measure of damages rather than a cognizable claim. The Kesslers do not meaningfully dispute this legal argument. They simply explain, factually, how the Kesslers were unable to use or enjoy the property. The Kesslers do not cite to any statutes or case law showing loss of enjoyment and use of property is a recognized claim under North Dakota law.

Under Section 32-03-09.1 of the North Dakota Century Code, the loss of use of property is a measure of damages for injury to property not arising from contract. North Dakota case law also discusses compensation for the loss of use of property as a measure of damages. See, e.g., Robert v. Aircraft Inv. Co., 1998 ND 62, 575 N.W.2d 672. The Court is not aware of, and the Kesslers have not drawn the Court's attention to, any North Dakota case law supporting the contention that the loss of enjoyment and use of property is a separate and recognized legal claim under North Dakota law.

The Court concludes that the loss of enjoyment and use of property is not a recognized legal claim under North Dakota law. Loss of enjoyment and use of property is only a measure of damages available through other claims. The Plaintiffs have recognized the loss of enjoyment and use of property is a measure of damages by requesting damages for the "inability to have full use and enjoyment of their property" in relation to their inverse condemnation, negligence, and nuisance claims. See Doc. No. 68. Because the Kesslers' other claims fail as described above, they do not have a cognizable claim for which they could seek damages for loss of enjoyment and use of property.

The Court finds the loss of enjoyment and use of property is not a cognizable claim that the Kesslers can maintain. Further, the Kesslers cannot recover damages for the loss of enjoyment and use of property because the claims for which they request the relief fail as a matter of law based on the applicable statute of limitations. Accordingly, summary judgment must be granted.

## E.   ATTORNEY'S FEES

The Kesslers seek to recover attorney's fees in connection with their inverse condemnation claim[1]. See Doc. No. 1-1, p. 6-7. The court may award "reasonable costs and attorney's fees to a landowner-plaintiff in an inverse condemnation action." Lincoln Land Dev., LLP v. City of Lincoln, 2019 ND 81, ¶ 22, 924 N.W.2d 426. However, in this case summary judgment must be granted on the Kesslers' underlying inverse condemnation claim because it is barred by the statute of limitations. Consequently, the Kesslers' claim for attorney's fees for their inverse condemnation claim fails.

## F.   PUNITIVE DAMAGES

The Kesslers also seek punitive damages against Minnesota Power for allegedly acting "with oppression, fraud, or actional malice." See Doc. No. 68, p. 7. Specifically, the Kesslers allege Minnesota Power lied to the Kesslers and the PSC about not knowing the Kessler Farmstead was a residence "for the purpose of not having to move or take down Turbine 441 at the cost of millions of dollars." Id. at p. 8. Punitive damages are not allowed unless there are also compensatory damages. Riebe v. Riebe, 252 N.W.2d 175, 178 (N.D. 1977). See also Hallmark Specialty Ins. Co. v. Phoenix C & D Recycling, Inc., 999 F.3d 563 (8th Cir. 2021) (because the district court resolved the underlaying substantive claims, the claims for punitive damages was moot and summary judgment was appropriate). Here, summary judgment is warranted on all of the Kesslers' substantive claims. The Kesslers cannot sustain a claim for punitive damages without

---

[1] The Kesslers' claim for attorney's fees in their complaint also seeks to recover attorney's fees incurred through the administrative action with the PSC. See 1-1, p. 6-7. However, the Court previously dismissed the Kesslers' claim for attorney's fees in connection with the PSC proceedings. See Doc. No. 27.

compensatory damages on their other claims. Accordingly, summary judgment must be granted on the Kesslers' punitive damage claim.

## IV.     **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, Minnesota Power's motion for summary judgment (Doc. No. 126) is **GRANTED**. Minnesota Power's motion for hearing (Doc. No. 131) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 3rd day of September, 2025.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court